UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>        v.<br><br>ROGER JOHNSTON, an individual; KIRK JOHNSTON, an individual; and DOES 1–10, inclusive,<br><br>Defendants. | No. 2:18-cv-02729-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Plaintiff United States Liability Insurance Company's ("Plaintiff") Motion for Summary Judgment.  (ECF No. 11.)  Defendants Roger Johnston and Kirk Johnston (collectively, "Defendants") submitted an opposition.  (ECF No. 15.)  Plaintiff filed a reply.  (ECF No. 16.)  Also before the Court is Defendants' Motion for Leave to File a Counterclaim.  (ECF No. 19.)  Plaintiff filed an opposition, and Defendants filed a reply.  (ECF Nos. 20, 21.)  For the reasons set forth below, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 11) and DENIES as moot Defendants' Motion for Leave to File a Counterclaim (ECF No. 19).

///

///

### I.     FACTUAL AND PROCEDURAL BACKGROUND

This case involves interpretation of a liquor liability coverage policy issued by Plaintiff to Defendants.  (*See* ECF Nos. 1, 11.)  Defendants own and operate an establishment called the Press Club in Sacramento, California.  (ECF No. 15-3 at 2.)

#### A.     The Underlying Action

Defendants have been named as defendants in a current action in Sacramento County Superior Court — *Broadway, et al. v. Johnston, et al.*, No. 34-2017-00205761-CU-PO-GDS (the "Underlying Action").[1]  In the Underlying Action, Press Club patrons Wayne A. Broadway ("Broadway"), Sean Schaplowsky ("Schaplowsky"), and Michael Williams ("Williams") (collectively, the "Underlying Plaintiffs") seek damages for injuries sustained on January 17, 2015.  (*Id.* at 2–3.)  The Underlying Plaintiffs allege Defendants negligently failed to provide patrons with a safe environment and negligently failed to train, supervise, and/or monitor their employees, thereby resulting in injury to "their health, strength, and activity, . . . grievous injury to their body and profound shock and injury to their person and nervous system, all of which . . . resulted in great mental, physical, and nervous pain and suffering."  (*Id.* at 3–4; ECF No. 11-1 at 7–9.)  The complaint in the Underlying Action also alleges Defendants were in violation of Sacramento City Code § 5.108.190, which conditions the issuance of the Press Club's entertainment permit upon the establishment's fulfillment of certain requirements, such as ensuring the prompt and orderly dispersal of crowds from the area after entertainment has ended.

---

[1]     Both Plaintiff and Defendants have submitted Requests for Judicial Notice.  (*See* ECF Nos. 11-1, 15-2.)  The Court will only judicially notice the documents upon which it relies.  Here, the only document at issue in the requests for judicial notice upon which the Court relies is the state court complaint for the Underlying Action.  The Court may take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The record of a state court proceeding is one such source.  *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The Court cannot accept the representations made in the state court documents as true, but it may take judicial notice of the documents themselves and the fact that those representations were made.  *NuCal Foods, Inc.*, 887 F. Supp. 2d at 984–85.  Subject to that caveat, Plaintiff's request for judicial notice of Exhibit A — Underlying Plaintiffs' complaint in *Broadway, et al. v. Johnston, et al.*, No. 34-2017-00205761-CU-PO-GDS — is GRANTED.

2

(ECF No. 15-3 at 4; ECF No. 11-1 at 9–12.)  The Underlying Plaintiffs also allege Defendants' failure to ensure the prompt and orderly dispersal of crowds from outside the Press Club is an alternative cause of their injuries.  (ECF No. 15-3 at 5; ECF No. 11-1 at 12–15.)

On March 3, 2015, the City of Sacramento Business Compliance Division issued an administrative penalty of $999.99 to the Press Club and Defendants for failing to comply with the condition of their entertainment permit requiring the prompt and orderly dispersal of crowds after closing time.  (ECF No. 15-3 at 5–6.)  The penalty was ultimately upheld after a public hearing on the issue was held on June 24, 2015.  (*Id.* at 6.)  The Underlying Plaintiffs testified during the hearing that they left the Press Club around 1:45 to 1:50 am and were waiting for a friend to pick them up when Schaplowsky became involved in an altercation.  (*Id.* at 7.)  Broadway and Williams testified that they rushed to assist Schaplowsky, and during the fight all three were stabbed.  (*Id.*)  Williams testified that Schaplowsky was walking in a crosswalk when a man ran up to Schaplowsky and punched him in the face, even though Schaplowsky did nothing to provoke him.  (*Id.* at 8.)  Williams further testified that there were two security guards outside of the Press Club telling people to disperse, but neither did anything to stop the altercation nor did they help Schaplowsky during the fight.  (*Id.*)  The police report indicates Plaintiffs appeared to be intoxicated, but does not mention alcohol otherwise.  (*Id.* at 9.)

### B.    The Policy

Plaintiff issued a General Liability Policy to "Roger & Kirk Johnston dba: The Press Club" for the period of September 3, 2014 to September 3, 2015 (the "Policy").  (*Id.* at 10; ECF No. 16-1 at 2.)  The Policy contained an exclusion of "Liquor Liability," which means it does not cover "bodily injury . . . by reason of . . . causing or contributing to the intoxication of any person . . . if you are in the business of selling . . . alcoholic beverages."  (ECF No. 16-1 at 2.)  Therefore, Defendants also purchased Liquor Liability coverage ("LLC") from Plaintiff to fill this gap.  (*Id.*)  The LLC "promises coverage for liability for bodily injury 'imposed on the insured by reason of selling of, service or furnishing any alcoholic beverage.'"  (*Id.* at 5 (citing ECF No. 11-3 at 11).)

Defendants sought coverage with respect to the Underlying Action, and Plaintiff disclaimed coverage on the basis that the Underlying Plaintiffs' injuries "were not alleged to be

caused by the Press Club's selling, serving, or furnishing of alcoholic beverages to anyone."

(ECF No. 15-3 at 10–11.)  While the parties continued to discuss coverage, Plaintiff "agreed to

provide Defendants with a defense to the Underlying Action subject to a reservation of rights,

including the right to bring the instant declaratory relief action and the right to seek

reimbursement of any defense fees and costs incurred."  (*Id.* at 11–13.)

C.     Procedural History

On October 9, 2018, Plaintiff filed its Complaint alleging a single claim for a declaratory

judgment that seeks a declaration from this Court that:

> [T]here is no coverage for Defendants under the Policy with respect
> to the Underlying Action because:
>
> (a) There is no indication that Underlying Plaintiffs seek to impose
> liability upon Defendants "by reason of the selling, serving or
> furnishing of any alcoholic beverage," thus precluding any potential
> for coverage under the Policy; and
>
> (b) Even if the Underlying Plaintiffs were seeking to impose liability
> upon Defendants "by the reason of the selling, serving or furnishing
> of any alcoholic beverage," Cal. Civ. Code § 1714 and Cal. Bus. &
> Prof. Code § 25602 precludes any potential for coverage under the
> Policy[;] . . .
>
> [and] Defendants are required to reimburse [Plaintiff] for all fees and
> costs that [Plaintiff] has incurred to defend them in the Underlying
> Action because the Underlying Action never was potentially covered
> under the Policy.

(ECF No. 1 at 7.)  On November 13, 2018, Plaintiff filed the instant motion for summary

judgment.  (ECF No. 11.)  On December 27, 2018, Defendants filed an opposition (ECF No. 15),

and on January 3, 2019, Plaintiff filed a reply (ECF No. 16).

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue

of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

judgment practice, the moving party always bears the initial responsibility of informing the

district court of the basis of its motion, and identifying those portions of "the pleadings,

depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

4

which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (*Matsushita*), 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

## III.   ANALYSIS

Plaintiff moves for summary judgment as to its single declaratory judgment claim, arguing (1) there is no potential for coverage under the Policy for the Underlying Action because liability is not premised on the service of any alcoholic beverage and (2) coverage under the Policy is barred by operation of California's dram shop laws. (*See* ECF No. 11 at 13–14 (citing Cal. Bus. & Prof. Code § 25602(b)).) The Court will address both arguments in turn.

### A.   Interpretation of the Policy

As stated previously, the LLC provides that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which the insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." (ECF No. 11-3 at 11.) There is no dispute the Underlying Plaintiffs suffered an "injury," but the parties disagree as to the meaning of the phrase "by reason of."

The California Supreme Court has held that "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation."[2] *MacKinnon v. Truck Ins. Exch., Inc.*, 31 Cal. 4th 635, 647 (2003) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). Judicial interpretation is guided by the "clear and explicit" meaning of the contract

---

[2]   Although the California Supreme Court's decision in *MacKinnon* dealt with traditional absolute pollution exclusions in the context of commercial general liability, the Court finds that its reasoning is equally instructive on interpreting liquor liability exclusions.

provisions in their "ordinary or popular sense," unless the parties use the terms in a technical sense or assign a special meaning by usage.  *See MacKinnon*, 31 Cal. 4th at 647–48; Cal. Civ. Code §§ 1638–44.  A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations.  *See MacKinnon*, 31 Cal. 4th at 648.  However, the language of a contract must be interpreted as a whole and cannot be found ambiguous in the abstract.  *Id.* (citing *Waller*, 11 Cal. 4th at 18).  Furthermore, "insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'"  *Id.* (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

"[A]ny exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.  Thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.  The exclusionary clause must be conspicuous, plain and clear."  *Id.* (internal quotations, citations, and emphasis omitted).  This rule is specifically applicable where "the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded."  *Id.* (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 272–73 (1966)).  Thus, the insured bears the burden of establishing that the claim is within the basic scope of coverage, and the insurer bears the burden of establishing that the claim is specifically excluded.  *See id.*; *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998).

"California courts recognize that § 25602(b) 'does not preclude all actions against [bar owners],' and that a bar owner has a 'duty of care to take reasonable steps to protect his or her guests from the aggressive conduct of other persons on the premises."  *See N. E. Ins. Co. v. Masonmar, Inc.*, No. 1:13-CV-364 AWI SAB, 2014 WL 1247604, at \*5 n.4 (E.D. Cal. Mar. 25, 2014) (quoting *Cantwell v. Peppermill Inc.*, 25 Cal. App. 4th 1797, 1801 (1994)).  The Underlying Plaintiffs' claims — negligent failure to provide patrons with a safe environment or negligent failure to train employees, negligence per se for a violation of Sacramento City Code § 5.108.190, and negligent failure to disperse patrons from the vicinity of the Press Club at closing time — are based on a premises liability theory.  *Id.* at \*3.  In *Delgado v. Trax Bar & Grill*, 36

Cal. 4th 224 (2005), the California Supreme Court held that "a tavern keeper's duty to protect patrons arises from one of several circumstances, none of which necessarily involves or depends upon the furnishing of alcohol." *N. E. Ins. Co.*, 2014 WL 1247604, at *3.  Under *Delgado*, regardless of whether anyone has been furnished alcohol, the duty to protect may arise and liability may be imposed.  36 Cal. 4th at 235 ("Courts have found such a special relationship in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees . . . [it is] 'well established' . . . that a proprietor[']s 'general duty of maintenance, which is owed to tenants and patrons, . . . *include[s] the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures*." (emphasis in original)).  The theory behind the Underlying Plaintiffs' claims is failure to protect, not furnishing alcohol.

In *N. E. Ins. Co.*, a court in this district dealt with substantially similar underlying facts and questions of law regarding a near-identical LLC policy.  2014 WL 1247604, at *1.  Individuals visiting a bar operated by the defendant became involved in an altercation with other customers in which they were attacked, stabbed, and struck repeatedly.  *Id.*  These individuals filed a personal injury suit against the defendant alleging negligence for failure to provide adequate security measures, failure to protect them from the other customers, and continuing to serve alcohol when the bar should not have done so.  *Id.* at *2.  The individuals demanded the plaintiff, an insurance company which issued to the defendant a commercial general liability ("CGL") policy[3] and LLC policy, pay its policy limits to settle their claims against the defendant.  *Id.* at *1–2.  The plaintiff then sought a declaration in federal court that its $100,000 ABL sets the applicable policy limits for the individuals' case.  *Id.* at *3.  Both the plaintiff and the defendant moved for summary judgment, disputing the meaning of the phrase "by reason of" in the LLC

---

[3]     The CGL policy was modified by an Assault and Battery Limitation ("ABL") endorsement, which reduced liability under the CGL to $100,000 "for damages and supplementary payments alleged or claimed for, among other thin[g]s, 'bodily injury' resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises."  *Id.* at *1.

policy. *Id.* at *4–6. The court found the theory behind the individuals' claims was also based on premises liability. *Id.* at *3. Applying California and Illinois case law regarding insurance and contract interpretation, it found "by reason of" is similar to "for," "because of," and "on account of," and expresses "a link, as opposed to creating a standard of causation." *Id.* at *6 (citing cases). Accordingly, the relevant question was "whether the negligent protection claim against [the defendant] would create liability by reason of, i.e. because of or an account of, the selling, serving, or furnishing of any alcoholic beverage." *Id.*

The court examined the CGL versus the LLC and noted the structure of the former "shows that the LLC is designed to provide coverage for the claims that the CGL's Liquor Liability Exclusion would otherwise exclude." *Id.* at *8. The court stated:

> First, the title of the CGL's "Liquor Liability Exclusion" is a mirror image of the LLC's "Liquor Liability Coverage Form" title. This indicates a relationship between the LLC's coverage provision and the CGL's exclusion. Second, and relatedly, the CGL's Liquor Liability Exclusion applies if the insured is in the business of manufacturing, distributing, selling, serving, or furnishing alcohol, while the LLC applies to liability imposed by reason of selling, serving, or furnishing alcohol. Although "manufacturing" and "distributing" are not part of the LLC's coverage language, the LLC's use of the terms "selling, serving, or furnishing" further indicates a relationship between the LLC and the CGL Liquor Liability Exclusion. Third, the exact three categories excluded by the CGL Liquor Liability Exclusion (causing or contributing to intoxication, provision of alcohol to a minor or drunkard, and violation of an alcohol related statute) are expressly excepted from the LLC's "Your Product" exclusion. If the LLC's covering clause did not include those three categories of liability, then there would be no need to except them from the "Your Product" exclusion. That is, there is no need to say that an exclusion does not apply in three circumstances, if the three circumstances are not already covered by the policy. Fourth, although the LLC's covering language does not list the CGL's three liquor liability exclusions, liability for causing or contributing to intoxication, serving alcohol to a minor, or breaking a law relating to the provision of alcohol, could all reasonably be construed as liability that is imposed "by reason of the selling, serving, or furnishing of any alcoholic beverage."

*Id.* Based on the foregoing, the court interpreted "the LLC as covering claims that stem from the actual provision of alcohol or the violation of a statute/regulation relating to the sale, gift, distribution, or use of alcohol." *Id.* at *9. The court noted this interpretation "respects the meaning 'by reason of,'" and is consistent with the plain language of the LLC and the structure of

9

the entire policy as a whole.  *Id.*  Based on this reading of the LLC, the court ultimately found the individuals' failure to protect claim was not covered by the policy and granted the plaintiff's motion for summary judgment.  *Id.*

Here, as the relevant sections of the Policy and the LLC in the instant matter are the exact same as those in *N. E. Ins. Co.* (*see* ECF No. 11-3 at 11–12; ECF No. 15-7 at 24–25), the Court adopts *N. E. Ins. Co.*'s interpretation of "by reason of."  Accordingly, the relevant question is whether the claims would create liability "by reason of, i.e. because of or on account of, the selling, serving, or furnishing of any alcoholic beverage."  *Id.* at *6.  For the same four reasons articulated in *N. E. Ins. Co.* above, the Court finds "the structure of the Policy shows that the LLC is designed to provide coverage for the claims that the [Policy's] Liquor Liability Exclusion would otherwise exclude."  *Id.*  The Court therefore also interprets the instant LLC "as covering claims that stem from the actual provision of alcohol or the violation of a statute/regulation relating to the sale, gift, distribution, or use of alcohol."  *Id.* at *9.  Under this interpretation of the LLC, the Underlying Plaintiffs' claims — for negligent failure to provide patrons with a safe environment or negligent failure to train employees, negligence per se for a violation of Sacramento City Code § 5.108.190, and negligent failure to disperse patrons from the vicinity of the Press Club at closing time — are not covered.

The failure to protect claims articulated by *Delgado* are the type of claims alleged by the Underlying Plaintiffs in the Underlying Action.  Such claims focus on how an establishment failed to properly protect its invitees — they "do not include serving alcohol to minors or intoxicated persons, and they do not include either causing or contributing to intoxication."  *Id.* Further, there is "no indication that a statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcohol was violated."  *Id.*  Accordingly, any liability for the Underlying Plaintiffs' failure to protect claims "would not be by reason of/because of the selling, serving, or furnishing of alcohol."[4]  *Id.*; *see also Cantwell*, 25 Cal. App. 4th at 1801 ("The gravamen of the

---

[4]     As previously noted, the Underlying Plaintiffs allege Defendants violated Sacramento City Code § 5.108.190, which conditions the issuance of the Press Club's entertainment permit upon the establishment's fulfillment of certain requirements, such as ensuring the prompt and orderly dispersal of crowds from the area after entertainment has ended.  (ECF No. 15-3 at 4;

1  cause of action is that the injury resulted from respondent's failure to protect patrons from the

2  tortious or criminal conduct of others, and not from the furnishing of alcohol.").

3            **B.**    <u>California's Dram Shop Laws</u>

4         Even if the Policy were to cover the Underlying Plaintiffs' claims, the Underlying

5  Plaintiffs do not assert any claims for negligent provision of alcohol.  To the extent they do,

6  Plaintiff is correct that California Business & Professions Code § 25602(b) provides that "[n]o

7  person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic

8  beverage [to a habitual or common drunkard or an obviously intoxicated person] shall be civilly

9  liable to any injured person or the estate of such person for injuries inflicted on that person as a

10  result of intoxication by the consumer of such alcoholic beverage."  Plaintiff is further correct that

11  the only exception to this "sweeping civil immunity" is liability for providing alcohol to a clearly

12  intoxicated minor.  (ECF No. 11 at 15); Cal. Bus. & Prof. Code § 25602.1; *Strang v. Cabral*, 37

13  Cal. 3d 720, 724 (1984); *Ruiz v. Safeway, Inc.*, 209 Cal. App. 4th 1455, 1462 (2012).  Defendants

14  do not contest this point in their opposition.  (*See* ECF No. 15.)  Accordingly, such claims are not

15  covered by the Policy.

16       **IV.**   **CONCLUSION**

17         Based on the foregoing, the Court hereby GRANTS Plaintiff's Motion for Summary

18  Judgment (ECF No. 11) and DENIES as moot Defendants' Motion for Leave to File a

19  Counterclaim (ECF No. 19).

20         It is declared that there is no coverage for Defendants under the Policy with respect to the

21  Underlying Action because: (1) there is no indication that Underlying Plaintiffs seek to impose

22  liability upon Defendants "by reason of the selling, serving or furnishing of any alcoholic

23  beverage," thus precluding any potential for coverage under the Policy; and (2) even if the

24  Underlying Plaintiffs were seeking to impose liability upon Defendants "by reason of the selling,

25  serving or furnishing of any alcoholic beverage," Cal. Civ. Code § 1714 and Cal. Bus. & Prof.

26  Code § 25602 precludes any potential for coverage under the Policy.

27  —————————————

28  ECF No. 11-1 at 9–12.)  The Court finds the city code does not relate "to the sale, gift, distribution or use of alcohol."

Defendants are further ordered to reimburse Plaintiff for all fees and costs Plaintiff has incurred to defend them in the Underlying Action.  The Clerk of the Court is directed to enter judgment in favor of Plaintiff and close this case.

IT IS SO ORDERED.

Dated:  September 10, 2021

Troy L. Nunley
United States District Judge